# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE BROWN, | ) | |
| | ) | |
| Movant, | ) | Case No. 15 C 7439 |
| | ) | |
| v. | ) | Criminal Case No. 10 CR 516-1 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Joan H. Lefkow |
| | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Bruce Brown filed a timely *pro se* motion under 28 U.S.C. § 2255 to vacate his conviction and sentence, arguing ineffective assistance of trial counsel, prosecutorial misconduct, and that his sentence should be corrected. (Dkt. 1, 36.)[1] For the reasons stated below, Brown's motion is denied in part and stayed in part.

## BACKGROUND[2]

On February 23, 2011, Brown was charged with six counts of wire fraud in violation of 18 U.S.C. § 1343 (counts one through five, and eight), two counts of mail fraud in violation of 18 U.S.C. § 1341 (counts six and seven), and one count of bank fraud in violation of 18 U.S.C. § 1344 (count nine) as a result of his involvement in a mortgage fraud scheme. (Cr. dkt. 60.) Brown was charged along with seven co-defendants: Walker Smith, Brigitte Grose, Mario

---

[1] References to the docket in Brown's underlying criminal case, *U.S.* v. *Brown*, No. 10 CR 516-1 (N.D. Ill.), are cited as (Cr. dkt.). His 2005 criminal conviction, *U.S.* v. *Brown*, No. 05 CR 73 (N.D. Ill.), is cited as (Case No. 05 CR 73, Dkt.). References to the present civil proceeding are cited as (Dkt.).

[2] Because Brown does not provide a factual summary of the case in his first or amended motion, this summary is taken from Brown's appeal, *U.S.* v. *Brown*, 779 F.3d 486 (7th Cir. 2014), the docket, and the government's response to his § 2255 motion.

Moore, Anne Taylor, John Rucker, Johnny Williams, and Bernard Sheppard. (*Id.*) All but Brown and Moore pleaded guilty. Several of the defendants testified at Brown's trial, including Grose, Moore, and Smith.

The mortgage fraud scheme involved six mortgage transactions related to properties in the Chicago area.[3] *United States* v. *Brown*, 779 F.3d 486, 491 (7th Cir. 2014). Beginning in about May 2005 and lasting for approximately one year, Brown recruited buyers to purchase houses with mortgages obtained using falsified information. *Id.* at 490–91. Brown arranged to have a "decorating allowance" of $5,000 to $10,000 included in each purchase agreement from which he received a 40 percent commission. (Dkt. 18 at 5.) The decorating allowance was not used for renovations on some of the properties. (*Id.* at 5–11.) Approximately $1.8 million in mortgage proceeds were obtained through the scheme, inflicting over $1 million of losses on the lenders after the properties went into foreclosure. *Brown*, 779 F.3d at 491.

The government dropped one count of mail fraud (count seven) during trial (cr. dkt. 218), and on November 10, 2011, a jury found Brown guilty of the remaining counts of wire, mail, and bank fraud (counts one through six, eight and nine), (cr. dkt. 222). Brown was sentenced on September 20, 2012 to 60 months' imprisonment on each count to run concurrently, three years of supervised release, and restitution in the amount of $1.067 million.[4] (Cr. dkt. 318.)

---

[3] The transactions are as follows: purchase of 6608 S. Lowe by Grose on or about June 17, 2005; purchase of 6610 S. Lowe by Grose on or about July 18, 2005; refinance of 6608 S. Lowe by Grose on or about September 1, 2005; purchase of 7225 S. Halsted by Moore on or about November 15, 2005; purchase of 20431 Greenwood Drive by Moore on or about March 2, 2006; purchase of 6608 S. Lowe by Moore (from Grose) on or about April 5, 2006. (Cr. dkt. 60.)

[4] According to the Bureau of Prison's website, https://www.bop.gov/inmateloc, Brown was released from custody on May 26, 2017, and is now on supervised release.

Brown's criminal history is relevant to the current proceedings. In 2003, Brown pleaded guilty to one count of filing a false income tax return and was sentenced to five years of probation and four months of home confinement. *Brown*, 779 F.3d at 488. In 2005, Brown pleaded guilty to one count of money laundering and was sentenced to three years of probation with credit for time he had already spent in custody. *Id.* at 488–89. Before trial in the present criminal case, Brown filed a motion to dismiss the indictment, arguing that the plea agreement in the 2005 money laundering case barred his prosecution in the mortgage fraud scheme unless he breached its terms, which he argued he had not. *Id.* at 491. He also requested that his trial be postponed while the motion to dismiss was being briefed. *Id.* The court denied Brown's request to postpone the trial but allowed him to file a reply brief after trial. *Id.* Brown filed his reply before sentencing, and his motion was ultimately denied in a written opinion, *United States* v. *Brown*, No. 10 CR 516-1, 2012 WL 182214 (N.D. Ill. Jan. 20, 2012). *Id.* Brown appealed the district court's denial of his motion to dismiss the indictment (cr. dkt. 326), but the denial was affirmed. *Brown*, 779 F.3d at 495.

On August 24, 2015, Brown filed this motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Dkt. 1.) Brown claims ineffective assistance of counsel, prosecutorial misconduct, and that his sentence needs to be corrected because of issues with how his 2005 criminal case was treated at his sentencing. (*Id.*) Many of his claims are based on the date he was taken into custody on the charges in his 2005 criminal case. On May 18, 2016, Brown filed a motion to expand the scope of his § 2255 proceedings. (Dkt. 23.) The court granted this motion and agreed to consider an affidavit filed by Brown, a copy of his 2005 arrest warrant, and the minute order granting the revocation of Brown's bond in the 2005 criminal case when deciding the pending § 2255 motion. (Dkt. 26.) On October 21, 2016, the court granted Brown's motion

for leave to amend or supplement his § 2255 motion, (dkt. 36), in which he modified aspects of the claims regarding his allegations of prosecutorial misconduct. (Dkt. 40.)

## LEGAL STANDARD

Section 2255 allows a person held in federal custody to petition the sentencing court for an order vacating, setting aside, or correcting his sentence. 28 U.S.C. § 2255(a). Relief under § 2255 is "reserved for extraordinary situations." *Hays* v. *United States*, 397 F.3d 564, 566 (7th Cir. 2005) (quoting *Prewitt* v. *United States*, 83 F.3d 812, 816 (7th Cir. 1996)). A movant must establish that "the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Hays*, 397 F.3d at 566–67 (quoting *Prewitt*, 83 F.3d at 816). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## ANALYSIS

Brown makes three overarching claims in his § 2255 motion: (1) that he was deprived of due process by the prosecutor suborning perjury by two witnesses; (2) that his trial counsel provided constitutionally ineffective assistance before and during his trial; and (3) that his sentence must be recalculated because his 2005 criminal case was not treated correctly in the calculation of his sentencing guidelines sentence range. (Dkt. 1; Dkt 36.)

**I.      Prosecutor's Alleged Use of False Testimony**

In the amendment to his § 2255 motion, Brown claims that he suffered a violation of due process through the prosecutor's subornation of perjury from witnesses Grose and Smith.[5] (Dkt. 36 at 6.) Brown alleges that Grose committed perjury when she stated that he was present at the closing of 6610 South Lowe on July 18, 2005 (cr. dkt. 374 at 60) and that Smith committed perjury when he testified that he and Brown twice discussed the refinancing of the property at 6608 South Lowe during July or August of 2005. (Cr. dkt. 390 at 4, 6). Brown argues that he was in custody from July 13, 2005 through August 30, 2005, so he could not have been involved in these transactions. (Dkt. 36 at 7.) Brown's claim fails because he has not met his burden of showing that his conviction was obtained through the prosecutor's knowing use of false testimony.

A conviction obtained through the knowing use of perjured testimony violates due process. *Morales* v. *Johnson*, 659 F.3d 588, 606 (7th Cir. 2011) (citing *Napue* v. *Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959)). To obtain a new trial, a movant must show that "(1) there was false testimony; (2) the prosecution knew or should have known it was false; and (3) there is a likelihood that the false testimony affected the judgment of the jury." *Morales*, 659 F.3d at 606 (citing *United States* v. *Freeman*, 650 F.3d 673, 678 (7th Cir. 2011)). This standard does not require "conclusive proof that the testimony was false or that the witness could be successfully prosecuted for perjury," and it covers "half-truths" and other statements

---

[5] Brown did not raise his subornation of perjury claims on direct appeal. Generally, a claim that could have been raised on direct appeal generally cannot be considered in a § 2255 motion unless the movant shows cause and prejudice for failing to raise the issue earlier. *Galbraith* v. *United States*, 313 F.3d 1001, 1006 (7th Cir. 2002); *see also Bousley* v. *United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998). Procedural default, however, is an affirmative defense that "can itself be waived by not being raised." *Id.* at 699. Since the government did not raise the matter of procedural default, the court will consider the merits of Brown's claim. *See United States* v. *Kenngott*, 840 F.2d 375, 379 (7th Cir. 1987).

that "give a false impression to the jury." *Freeman*, 650 F.3d at 680. The knowing use of false testimony alone, however, is not sufficient to warrant a new trial if the evidence against the defendant is otherwise so strong that the testimony in question was not necessary to obtain the conviction. *Id.* at 682 (citing *United States* v. *Beck*, 625 F.3d 410, 421 (7th Cir. 2010)).

Brown's first claim, that the prosecution knowingly used false testimony from Grose regarding the July 18, 2005 closing, is without merit. In his first appearance before the court, on January 26, 2005, Brown was released on a $4,500 unsecured bond. (Case No. 05 CR 73, Dkt. 7.) Brown was arrested and brought before the court for arraignment on the indictment in the case on July 13, 2005. (Case No. 05 CR 73, Dkt. 20.) At the arraignment hearing, the government moved to revoke Brown's bond, and a detention hearing was set for July 19, 2005. (*Id.*) On July 19, Brown's bond was revoked and he was taken into custody. (Case No. 05 CR 73, Dkt. 18.) This is consistent with the United States Marshals Service Custody Report provided by the government showing that Brown was in custody from July 19, 2005, through August 30, 2005. (Dkt. 18 at 37.)[6] Thus, the period that Brown was in custody does not foreclose the possibility that he was present at the July 18 closing.

Brown's strongest challenge to Grose's testimony is based on her statement that she, Brown, Powell, Powell's lawyer, and Smith were all present at the July 18 closing of 6610 South

---

[6] Brown has stated that he was in custody from May 19, 2005 through August 30, 2005, (dkt. 1 at 5), from June 2005 through August 30, 2005, (*id.*), from June 19, 2005 through August 31, 2005, (*id.* at 11), and finally for a two and one-half month period ending on August 31, 2005 (*id.*). To support these dates, Brown points to the sentencing transcript from 05 CR 73 where his defense lawyer and the Judge discussed a two and one-half month period during which Brown was in custody. (Case No. 05 CR 73, Dkt. 161-2 at 6, 11, 21, 22, 23.) During the sentencing hearing, however, no specific dates were mentioned, and the docket for case 05 CR 73 actually reflects a roughly one and one-half month period in custody from July 19, 2005, through August 30, 2005. Accordingly, this two and one-half month time period seems to be a mistake. Moreover, in the amendment to his § 2255 motion, Brown contends that he was actually in custody from July 13, 2005 through August 30, 2005, rather than the various time periods listed in his original motion. (Dkt. 36 at 7.)

Lowe (cr. dkt. 374 at 60), whereas Smith testified that only he and Grose were present (cr. dkt. 373 at 101). Powell stated that he did not recall being present at this closing, but that his lawyer was there. (Cr. dkt. 389 at 49, 66.) While the conflicting information calls Grose's testimony into doubt, nothing suggests that she was intentionally lying, and "mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States.* v. *Saadeh*, 61 F.3d 510, 523 (7th Cir. 1995) (citing *United States.* v. *Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990)). "Rather, the alleged[ly] perjured testimony must bear a direct relationship to the defendant's guilt or innocence." *Saadeh*, 61 F.3d at 523 (citing *United States* v. *Adcox*, 19 F.3d 290, 295 (7th Cir. 1994)).

Even if Grose had perjured herself and the government knew it, Brown's physical presence at the July 18 closing was not necessary for the jury to convict him on the relevant count of the indictment (count nine). (*See* Cr. dkt. 60 at 17–18.) Count nine involves the overall scheme to defraud a mortgage lender and "knowingly submit[ing]" or "caus[ing] to be submitted" false documents to the lender. (*Id.* at 17.) Since the combined testimony of Smith, Powell, and Grose unambiguously establishes Brown's involvement in this transaction, it is unlikely that this fact would have affected the jury's judgment of conviction. Brown therefore fails to meet his burden of showing that the government knowingly used false testimony from Grose that affected the jury outcome. *See Morales*, 659 F.3d at 606.

Brown also claims that Smith committed perjury when he testified that he and Brown had two conversations during July or August 2005 about refinancing the mortgage for 6608 South Lowe, because these conversations would have occurred while Brown was in custody. Smith's testimony regarding the dates of the telephone calls is not consistent. Smith testified both to having two conversations about the refinance in August, and to talking sometime in July or

August. (Cr. dkt. 390 at 3–7, 111–12.) Smith further testified that Brown called him for the first telephone conversation, but that he could not remember who called whom the second time. (*Id.* at 112.) It would not, however, have been impossible for Brown to call Smith while in custody, and Brown has not produced phone records from his time in custody nor other evidence to corroborate his contention that Smith's testimony was false.[7] By failing to establish that Smith's testimony was false, Brown fails to meet his burden of showing that the government knowingly used false testimony. *See Morales*, 659 F.3d at 606. Moreover, as discussed above, the overwhelming weight of the evidence establishes Brown's participation in the transaction, rendering it unlikely that any inaccuracies in Smith's testimony affected the jury's judgment of conviction.

## II.     Ineffective Assistance of Counsel

A movant "bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States* v. *Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). To prevail, he must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Strickland* v. *Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

To satisfy the first prong of the *Strickland* test, a movant must direct the court to specific acts or omissions of his counsel. *Fountain* v. *United States*, 211 F.3d 429, 434 (7th Cir. 2000) (citing *Trevino*, 60 F.3d at 338). The court must then consider whether, in light of all of the circumstances, counsel's performance was outside the range of professionally competent

---

[7] Brown's attorney requested telephone records from the facility where Brown was incarcerated from July 19, 2005 through August 30, 2005, to contest whether these telephone calls occurred, but it is unclear whether he ever received the records. (*See* Cr. dkt. 390 at 110; dkt. 36 at 15.)

assistance. *Id.* To satisfy the second prong of the *Strickland* test, the movant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. If Brown cannot establish one of the *Strickland* prongs, the court need not consider the other. *See id*. at 697.

Ineffective assistance of counsel claims can be raised for the first time in a collateral proceeding under § 2255, regardless of whether the movant could have raised the claim on direct appeal. *Massaro* v. *United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003). Particularly where, as here, the movant was represented by the same lawyer at trial and on direct appeal, ineffective assistance of counsel claims may be better brought under a § 2255 motion. *United States* v. *Rezin*, 322 F.3d 443, 445 (7th Cir. 2003) ("[A lawyer] . . . can hardly [be] expected to accuse himself of ineffective assistance, or, for that matter, to [notice] the oversight now claimed to have rendered his assistance ineffective."); *see also Velarde* v. *United States*, 972 F.2d 826, 827 (7th Cir.1992) (stating that the ordinary requirements of cause and prejudice to excuse procedural default of an ineffective assistance claim need not be satisfied when the lawyer on direct appeal was also the movant's trial counsel). Since Brown's ineffective assistance of counsel claims are not procedurally defaulted, the court will address their merits.

    A.    **Failure to Object to the Prosecutor's Alleged Use of False Testimony**

Brown argues that his trial counsel was ineffective for failing to object to the prosecution's alleged use of false testimony. As discussed in Section I, however, Brown failed to meet his burden of showing that the prosecution knowingly used false testimony. Brown's attorney was therefore not performing outside the range of professionally competent assistance when he failed to raise a meritless objection. *See Fountain,* 211 F.3d at 434; *Stone* v. *Farley*, 86

9

F.3d 712, 717 (7th Cir.1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

### B. Failure to Research the Case and Prepare to Defend

Brown argues that his trial counsel was ineffective for failing to investigate or research the facts and law of Brown's case and for failing to prepare to defend him at trial. (Dkt. 1 at 4.) Specifically, Brown alleges that counsel provided ineffective assistance for (1) failing to discover that Grose allegedly committed perjury when testifying that Brown was present for the closings of 6608 South Lowe on June 17, 2005, and of 6610 South Lowe on July 18, 2005; (2) failing to file a pretrial motion to dismiss the indictment; (3) failing to interview defense and government witnesses to build a defense; and (4) failing to seek severance from codefendant Moore. (Dkt. 1 at 4–7.)

To support these claims, Brown points to the transcript from a motion hearing held approximately two weeks before trial, on October 12, 2011, where his attorney stated that he was "not going to be ready for trial even in the time left," and that "it is likely that I have provided Mr. Brown or I will provide Mr. Brown with ineffective assistance of counsel." (Cr. dkt. 397 at 4, 8). For the reasons stated below, however, counsel's statements are not dispositive.

#### 1. Failure to Discover Grose's Alleged Perjury

Brown argues that his counsel was ineffective for failing to discover that Grose allegedly committed perjury when testifying that Brown was present for the closings on June 17 and July 18, 2005. Perjury occurs when "[a] witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States* v. *Dunnigan*, 507 U.S. 87, 94, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993) (citing 18 U.S.C. § 1621(1)). "[F]alse

testimony is material if it is designed to substantially affect the outcome of the case," such as when it is "crucial to the question of guilt or innocence." *United States* v. *Arambula*, 238 F.3d 865, 868 (7th Cir. 2001). Thus, Brown must show that counsel's representation fell below an objective standard of reasonableness when he failed to discover that Grose intended to provide false testimony that was meant to affect the outcome of the case, and that counsel's omission did, in fact, affect the outcome of the case. *See Strickland,* 466 U.S. at 694.

Brown alleges that Grose knew her testimony was false, and therefore intentionally testified falsely, because she was his employer at the time he was in custody in 2005, and she posted 6610 South Lowe to secure his bond on August 30, 2005. (*See* Case No. 05 CR 73, Dkt. 90, 22–36.) While Brown is correct that Grose's testimony was important to establishing his presence at the closings of 6608 and 6610 South Lowe, the record does not corroborate his contention that Grose perjured herself. *See Dunnigan*, 507 U.S. at 94. There is no conflicting testimony regarding Brown's presence at the 6608 South Lowe closing. (*See* Cr. dkt. 373 at 78–79; cr. dkt. 374 at 50.) A finding of perjury requires a finding of intent on the part of the speaker; thus, the previously discussed inconsistency between Smith's and Grose's testimony about the July 18 closing of 6610 South Lowe is not sufficient to indicate that Grose committed perjury. *See Anderson* v. *United States*, 403 F.2d 451, 454 (7th Cir. 1968) ("[I]t is a common occurrence to have some conflicts in the testimony of witnesses, and [ ] any conflict in itself is not a signpost of perjury."). Moreover, as explained in Section I, the evidence in the record indicates that Brown was only in custody from July 19, 2005, through August 30, 2005; thus, it would not have been impossible for Brown to be present at the closing on July 18, 2005. Brown's incorrect contention that he was in custody for a different period of time is not sufficient to suggest that Grose committed perjury.

11

Accordingly, this ineffective assistance of counsel claim fails. Trial counsel could not have been ineffective for failing to discover perjury that is unsubstantiated. In any case, the trial transcripts reflect that counsel was aware of the general period that Brown was in custody (*see* cr. dkt. 374 at 100–01) and that he thoroughly cross-examined Grose on the activities that took place at around that time. (*Id.* at 94–99.)

### 2. Failure to File a Pretrial Motion to Dismiss the Indictment Due to Brown's Alibi

Brown argues that had his attorney conducted an adequate investigation into the dates he was in custody during the summer of 2005, his attorney would have filed a pretrial motion to dismiss the indictment based on a defect in instituting the prosecution against him. (Dkt. 1 at 5.) Specifically, Brown argues that he was in custody when "the transactions" took place and, thus, he was actually innocent of the offenses charged (*Id.* at 5–6.) Because Brown's trial defense was not prejudiced by counsel's omission, this claim of ineffective assistance of counsel fails. *See Strickland*, 466 U.S. at 694.

Under Federal Rule of Criminal Procedure 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." *See United States* v. *Yasak*, 884 F.2d 996, 1001 n.3 (7th Cir. 1989). In general, defenses involving questions of law are properly raised in pretrial motions, but questions on the issue of guilt or innocence are not because they "fall within the province of the ultimate finder of fact" and are "substantially intertwined with the evidence concerning the alleged offense." *Id.*; *see also United States* v. *Black*, 469 F. Supp. 2d 513, 518 (N.D. Ill. 2006).

Brown overstates the impact that a pretrial motion to dismiss the indictment would have had. Many of the counts with which Brown was charged occurred in fall 2005 and spring 2006, after he was released from custody. (*See* cr. dkt. 60.) Thus, a pretrial motion could not have

resulted in a not-guilty verdict on all counts. Moreover, Brown's claim that he was in custody at the time of the real estate transactions and his assertion of actual innocence would not have been properly resolved by a pretrial motion. These claims involve questions of fact that go to the core of his guilt or innocence for the charged offenses and were best left to the jury at trial. *See Yasak*, 884 F.2d at 1001 n.3. Since the court could not have resolved the questions of Brown's custody or innocence on a pretrial motion, Brown was not prejudiced by trial counsel's failure to file one.

### 3. Failure to Investigate or Call Witnesses

Brown argues that his trial counsel was ineffective for failing to investigate and interview defense and government witnesses such as Kia Grose, Walker Smith, Anne Taylor, Bernard Sheppard, Errol Powell, and Grose's grandmother. Brown claims that these witnesses would have corroborated his trial defense. (Dkt. 1 at 6.) During collateral review of counsel's effectiveness at trial, "there is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies," and strategic decisions are not second guessed. *Valenzuela* v. *United States*, 261 F.3d 694, 698–99 (7th Cir. 2001). A lawyer's decision not to call a witness "is a strategic decision generally not subject to review." *Id.* at 699–700 (citing *United States* v. *Williams*, 106 F.3d 1362, 1367 (7th Cir.1997)).

While counsel's "failure to discover and present exculpatory evidence that is reasonably available can constitute deficient performance," *Harris* v. *Thompson*, 698 F.3d 609, 643 (7th Cir. 2012), a movant alleging ineffective assistance of counsel based on a failure to investigate, "has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigations would have produced." *Hardamon* v. *United States*, 319 F.3d 943, 951 (7th Cir. 2003) (internal citation omitted). This standard requires more of a movant than merely stating that the outcome of his trial would have been different, since

"conclusory allegations do not satisfy *Strickland*'s prejudice component." *United States* v. *Farr*, 297 F.3d 651, 658 (7th Cir. 2002).

Rather than providing affidavits or other documentation outlining the precise contents of the testimony of his proposed witnesses, Brown claims only that the witnesses would have corroborated his trial defense. (Dkt. 1 at 6.) Particularly in light of the fact that Smith (cr. dkt. 373, 390), Taylor (cr. dkt. 393), Sheppard (cr. dkt. 391), and Powell (cr. dkt. 389) did testify at trial but their testimony was inculpatory, Brown's conclusional assertion that their testimony would have been exculpatory is not sufficient. The court finds that Brown has failed to meet his burden of showing that he was prejudiced by trial counsel's alleged failure to investigate these potential witnesses. *Strickland*, 466 U.S. at 694.

### 4. Failure to Move for Severance from Codefendant Moore

Brown lastly argues that his trial counsel was ineffective for failing to move for his trial to be severed from his codefendant Moore's trial after becoming aware that inculpatory statements made by Moore to law enforcement personnel would be introduced at trial.[8] (Dkt. 1 at 6.) Since the court finds that Brown was not prejudiced by the introduction of Moore's statement or by the joint trial, Brown's attorney was not ineffective for failing to move for severance.

A court may grant a motion for severance if a defendant will be prejudiced at trial by joinder of offenses or defendants. *United States* v. *Smith*, 223 F.3d 554, 573 (7th Cir. 2000) (citing Fed. R. Crim. P. 14). "Mutually antagonistic defenses are not prejudicial *per se*;" thus, severance is not required whenever codefendants present conflicting defenses. *Zafiro* v. *United States*, 506 U.S. 534, 538, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993). Rather, Rule 14(a) leaves

---

[8] After Brown's attorney did not object, the court granted the government's motion *in limine* to introduce Moore's statements to law enforcement personnel with references to Brown redacted. (Cr. dkt. 158.)

14

the decision to sever "to the district court's sound discretion," "even if prejudice is shown." *Id.* at 538–39. A "better chance of acquittal in separate trials" does not entitle defendants to severance. *Id.* at 540. Since a fair trial "does not include the right to exclude relevant and competent evidence," a "defendant normally would not be entitled to exclude the testimony of a former codefendant" even if a motion for severance were granted. *Id*. The Supreme Court has stated that severance under Rule 14 should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. Measures such as limiting instructions, however, "often will suffice to cure any risk of prejudice" given that "juries are presumed to follow their instructions." *Id.* at 539–40 (citing *Richardson* v. *Marsh*, 481 U.S. 200, 211, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987)).

The written statement summarizing the interviews between Moore and law enforcement personnel were not initially intended to be introduced as evidence (cr. dkt. 158 at 3), but they were ultimately introduced after Moore's decision to testify at trial eliminated Confrontation Clause concerns. *See United States* v. *Clark*, 989 F.2d 1490, 1498 (7th Cir. 1993) (citing *Nelson* v. *O'Neil*, 402 U.S. 622, 626, 91 S. Ct. 1723, 29 L. Ed. 2d 222 (1971) ("[T]he Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.")).

Regardless of whether Brown's lawyer strategically decided not to oppose the government's motion *in limine* to include Moore's statement and not to move for severance, Brown was not prejudiced.[9] The statement was only admitted against Moore (cr. dkt. 158 at 6),

---

[9] The record indicates that Brown's trial counsel had not reviewed Moore's statement in detail prior to when the government's motion *in limine* to introduce it was granted. (Cr. dkt. 395 at 3–4.) To

15

who was cross-examined at trial (cr. dkt. 388), and the jury was instructed to consider separately each defendant and the evidence against him. (*See* cr. dkt. 387 at 39). Additionally, Brown has not alleged specific reasons that he was prejudiced by a joint trial with Moore, such as having been denied a specific trial right or that the court's limiting instructions were insufficient to prevent the jury from making a reliable judgment about his guilt or innocence. *See Zafiro*, 506 U.S. at 539. Because the court finds that Brown was not prejudiced by his joint trial with Moore, Brown was similarly not prejudiced by his trial counsel's failure to move for severance.

### III. Correction of Sentence

In his last ground for § 2255 relief, Brown argues that his sentence must be corrected in light of the writ of error *coram nobis* he filed to vacate the conviction in his 2005 criminal case, since vacatur of this conviction would lower the criminal history score that determined his Guidelines sentencing range in the underlying criminal case ("Part 1"). (Dkt. 1 at 12–13.) In the alternative, Brown argues that his conviction in the 2005 criminal case was relevant conduct and never should have counted separately toward his criminal history score in the underlying criminal case ("Part 2"). (*Id.* at 12.)

Brown has procedurally defaulted his alternative argument (Part 2) by failing to raise it at sentencing and on direct appeal. (Dkt. 18 at 30–32.) *See Galbraith*, 313 F.3d at 1006. An error in sentencing is the type of claim that Brown could have raised on direct appeal. *See, e.g., Cabello* v. *United States*, 884 F. Supp. 298, 301 (N.D. Ind. 1995). Brown, however, did not previously argue that his conviction in the 2005 criminal case should be considered relevant conduct. (*See* Cr. dkt. 302, 434; Case No. 12-3290, Dkt. 46.) Additionally, Brown did not argue that the procedural default should be excused, either for cause and prejudice or because of a miscarriage

---

qualify as strategic, counsel's decision should be "reasoned," and should not result merely from a lack of preparation. *Harris*, 698 F.3d at 643.

of justice. *See Galbraith*, 313 F.3d at 1006. Thus, Brown has procedurally defaulted his alternative argument (Part 2), and the court is precluded from considering the merits. *See Kenngott*, 840 F.2d at 379.

The government does not address Brown's argument that his sentence should be corrected in light of the writ of error *coram nobis* he filed in the 2005 criminal case (Part 1). Brown's prior convictions for the federal tax offense in 2003 and for money laundering in the 2005 criminal case led to a Criminal History Category of III, which, combined with an Offense Level of 27, resulted in a guidelines range of 87–108 months. (Cr. dkt. 434 at 23; *see also* cr. dkt. 304 at 6.) Brown was sentenced to 60 months, a roughly 30 percent variance below the lower end of the guidelines range. (Cr. dkt. 434 at 61.) Brown argues that if his conviction in the 2005 criminal case is vacated, he will have three criminal history points rather than four, leading to a Criminal History Category of II. (Dkt. 1 at 13.) This would make the appropriate guidelines range 78–97 months. Combined with a similar 30 percent downward departure, Brown argues that the correct sentence would be 50 months. (Dkt. 1 at 13.)

If Brown's money laundering conviction in the 2005 criminal case is vacated, the guidelines calculation used by this court to determine his sentence in the underlying criminal case would be incorrect. A mistake in the guidelines range calculation warrants resentencing. *See United States* v. *Garza*, 241 F. App'x 336, 338 (7th Cir. 2007) (citing *United States* v. *Hagenow*, 423 F.3d 638, 646–47 (7th Cir. 2005)). Here, although Brown has been released from prison, his claim is not moot because he remains on supervised release, a form of custody, and it would not be impossible to reduce his term of supervised release. *See United States* v. *Larson*, 417 F.3d 741, 747 (7th Cir. 2005) (citing *United States* v. *Trotter*, 270 F.3d 1150, 1152–53 (7th Cir. 2001)). Although Brown would not automatically be entitled to credit against his three-year term

of supervised release if his sentence were reduced based on an updated guidelines calculation, the court would have discretion to shorten his supervised release as long as the new term complies with 18 U.S.C. § 3583(b) and U.S.S.G. § 5D1.2(a). *Trotter*, 270 F.3d at 1152–53. In light of the possibility that Brown's writ of error *coram nobis* in the 2005 criminal case could be granted, and resentencing therefore necessary, the court stays Part 1 of this portion of Brown's § 2255 motion.

## IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(B), Brown may appeal from a final order denying relief under § 2255 only if this court issues a certificate of appealability. Because the court is staying Brown's final claim, this is not a final judgment and the case in not yet in a posture for appeal. Thus, the court will not make a determination on appealability until such time as all claims have been resolved.

## CONCLUSION AND ORDER

For the foregoing reasons, Brown's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is denied with regard to his ineffective assistance of counsel claims, prosecutorial misconduct claim, and Part 2 of the claim to correct his sentence. Part 1 of Brown's claim to correct his sentence is stayed pending notification by Brown of the disposition of his writ of error *coram nobis* in his 2005 criminal case. (Case No. 05 CR 73, Dkt. 157.) Brown is directed to file a change-of-address notice by January 15, 2018. Failure to comply will result in

summary dismissal of the stayed claim for lack of prosecution, pursuant to Federal Rule of Civil Procedure 41.

Date: January 4, 2018

_____
U.S. District Judge Joan H. Lefkow